IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,807

STATE OF KANSAS,
*Appellee/Cross-appellant*,

v.

SAMUEL REED,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

Generally a district court properly refuses to consider issues raised for the first time in an untimely motion for new trial. But a claim of ineffective assistance of counsel is unique. A district judge's consideration of the merits of such a claim when raised in an untimely motion for new trial does not deprive the district court or the appellate court of jurisdiction.

2.

The invited error doctrine is inapplicable when the claimed constitutional error is structural.

3.

On the facts of this case, the criminal defendant's Sixth Amendment right to a public trial did not attach to the questioning of the victim to determine his availability to testify.

1

4.

A court order to testify in the face of contempt is not an indispensable condition for a finding that a witness is unavailable. In this case, the district judge did not abuse his discretion when he determined the victim was unavailable to testify, and the defendant's claim that his trial counsel was ineffective for failing to object to that decision is without merit.

5.

The interest and motive of an adverse party on a prior occasion for cross-examination of a witness need only be similar, not identical, to the interest and motive at a later point in order to vindicate the adverse party's right to confrontation. Moreover, it is the adverse party's interest and motive, not his or her attorney's, that define the proper focus. There was no violation in this case when the unavailable victim's prior preliminary hearing testimony was admitted at the defendant's trial. Defense counsel was not ineffective for allowing the admission.

6.

Criminal defense counsel is not ineffective for failing to object to a prosecutor's questions about whether a term of a witness' plea agreement requires the witness to testify truthfully and confirming that the witness believes himself or herself to be doing so. Such questions in this case were not improper.

7.

A district judge has a statutory duty to state the basis for imposing a departure sentence on the record and must make findings of fact on the reasons for departure. A district judge's stated belief that the sentencing guidelines have incorrectly determined the length of a particular sentencing range is not a substantial and compelling reason to

justify a departure sentence. To the extent that the district judge relied on any disparity in the sentencing guidelines between the parole eligibility dictated for an attempted crime and a completed crime, it was legal error to do so.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 1, 2013. Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed June 19, 2015. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, sentence is vacated, and remanded with directions.

*Richard Ney*, of Ney & Adams, of Wichita, argued the cause and was on the briefs for appellant/cross-appellee.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

BEIER, J.:  Defendant Samuel Reed shot Amos Becknell multiple times. Becknell survived. The State charged Reed with attempted first-degree murder and a jury convicted him as charged. At sentencing, the district court judge departed from the presumptive sentence for a severity level 1 crime and criminal history of A, instead sentencing Reed as though he had a criminal history of C.

Both Reed and the State appealed to the Court of Appeals. Reed raised several issues attacking his conviction and sentence. The State challenged the district judge's decision to depart. The panel rejected all errors asserted by both Reed and the State. We accepted Reed's petition for review and the State's cross-petition for review.

3

We now affirm Reed's conviction for attempted first-degree murder and vacate his sentence and remand to the district court for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of September 6, 2010, Reed and Michael Price borrowed a friend's blue car and went to Becknell's house. Reed drove, and Price was in the front passenger seat. Once Reed and Price arrived, one of the two got out of the car and shot Becknell in front of the house. Becknell suffered gunshot wounds to the leg and back, but he ultimately survived. Officers arrested Reed and Price that night.

The State charged Reed and Price with attempted first-degree murder. Price would eventually enter into a plea agreement with the State, in which he agreed to plead guilty to two counts of aggravated battery and testify against Reed.

On the day of trial, the prosecutor informed the district judge that Becknell was present but was unwilling to testify. The district judge, the prosecutor, and Reed's trial counsel discussed how best to proceed. The district judge indicated that he was willing to bring Becknell into the courtroom outside the presence of the jury in order to "get some direct feedback on the record as to his willingness [to testify]." The prosecutor responded that Becknell was "not comfortable even coming into the courtroom under the circumstances with spectators and taking the witness stand even to state his refusal to testify." The prosecutor suggested conducting the hearing in the judge's law library. Reed's trial counsel noted that "[i]t might be easier if we just emptied the courtroom and then did it in here" but ultimately "defer[red] to however the court wishe[d] to do it."

After the judge swore in the members of the jury and the parties' counsel made their opening remarks, the judge excused the jurors and then emptied the courtroom

4

except for counsel, Reed, and court personnel. Becknell initially refused to enter the courtroom, but eventually he did so and was sworn in. Becknell informed the judge that he refused to testify and wanted to go home. After a few clarifying questions, the judge determined that Becknell was unavailable as a witness and thus Becknell's preliminary hearing testimony would be read to the jury.

Testimony at trial clearly pointed to Reed as the shooter. Becknell's mother and another witness testified that they saw a blue car pull up to Becknell's home. Both saw the driver exit, approach Becknell, and shoot him. Becknell's mother had been unable to identify Reed from a photo lineup, but she testified at trial that she recognized Reed when she saw him at the preliminary hearing. A third witness testified that Reed had told her that he shot someone, and a fourth witness testified that she had overheard the conversation and that Price had later informed her that Reed shot someone.

When Price testified, he said his plea agreement required him to testify truthfully and that he was, in fact, testifying truthfully. He said that he and Reed drove to Becknell's house, and then Reed got out of the driver's seat of the car and walked up to the house. Price lost sight of Reed as he approached the house, but he heard a "loud clap" that "[c]ould have been a gunshot." After Price heard the loud noise, Reed returned to the car and the two left the scene.

Becknell's preliminary hearing testimony, admitted at trial, was consistent overall with the observations of the other witnesses. He said he had been sitting on his front porch when a man approached him from the driver's side of a blue car. After a brief exchange of words, the man shot Becknell. Becknell also was able to identify Reed as the shooter. Becknell said that he knew Price and that it was not Price who shot him.

5

Reed testified in his defense. He asserted it was Price who shot Becknell. According to Reed, he had agreed to take Price to Becknell's house so that Price could fight Becknell. When Reed approached Becknell's house, Price identified the house and told Reed to drive past and circle back. On the way back toward the house, Price crawled into the back seat. Once at the house, Reed testified, Price exited the driver-side rear door, went up to Becknell outside the house, and shot Becknell before running back to the car.

Between the jury's guilty verdict and sentencing, the defense filed a flurry of motions and the defense counsel roster changed multiple times.

Four days after trial, through trial counsel, Reed filed a motion for new trial and judgment of acquittal, alleging that the evidence was insufficient to support his conviction. Reed also filed a motion for a downward durational departure on his sentence.

More than a month later, with a new attorney, Reed filed a second motion for new trial and a motion for judgment of acquittal. Reed's motions argued that the credibility of the State's witnesses was a significant issue, that it was error to view Becknell as unavailable to testify at trial, and that the evidence was insufficient to support Reed's conviction.

Three months after the verdict, with a third attorney representing him, Reed filed a third motion titled "Supplemental Motion for a New Trial." In it, he raised new allegations of trial error and, for the first time posttrial, claimed ineffective assistance of trial counsel.

The district judge treated Reed's third motion as one seeking postconviction relief, similar to a motion filed under K.S.A. 60-1507, and held an evidentiary hearing. Reed's trial counsel testified at the hearing. The judge then denied the motion.

Six months after his conviction, Reed filed two more motions. The first motion challenged the constitutionality of a guidelines-based sentence. Reed argued that the sentence for his crime was cruel and unusual because, based on his criminal history score of A, his sentence for attempted first-degree murder was "potentially twice as long" as the sentence he would have received if he had successfully completed the offense. Reed also pointed out that his criminal history score was based on a "single case, committed when he was a juvenile, in which no one was seriously injured—two individuals received threatening texts and a police officer received a minor cut on his face." Reed's second motion again sought a downward durational departure. He argued that his criminal history classification significantly overrepresented his previous criminal history, that Price received only probation for his involvement in the shooting, and that Reed would have been eligible for parole after 25 years if he had completed the murder but would instead serve more than 50 years in prison under the guidelines.

At the sentencing hearing, the district judge dismissed the first two motions for new trial and the motion for judgment of acquittal. The district judge also rejected Reed's argument that a guidelines-based sentence was unconstitutional. The district judge granted Reed's departure motion and sentenced him to 272 months' imprisonment.

On appeal to the Court of Appeals, Reed claimed: (1) his trial counsel was ineffective; (2) his right to a public trial was violated when the court closed and locked the courtroom in order to consider Becknell's availability to testify; (3) prosecutorial misconduct deprived him a fair trial; and (4) his sentence constituted cruel and unusual punishment. The State cross-appealed the grant of a downward durational departure,

arguing the district judge lacked a substantial and compelling reason to depart from the presumptive prison sentence. The State also questioned the Court of Appeals' jurisdiction to hear Reed's ineffective assistance of counsel claim because the claim had been raised in what it believed to be an untimely motion for new trial.

On petition for review, Reed has now narrowed his claims to the following: (1) The Court of Appeals erred in holding that the closure of the courtroom for a hearing to determine whether Becknell would testify either was not a violation of Reed's Sixth Amendment right to a public trial or was a harmless violation; (2) the Court of Appeals erred in holding that Becknell was unavailable and that Reed had a prior opportunity to confront Becknell at the preliminary hearing; and (3) the Court of Appeals erred in holding that there was no ineffectiveness in trial counsel's failure to object to the prosecutor eliciting testimony from Price about his truthfulness. On its cross-petition, the State again challenges the sentencing departure and questions jurisdiction to examine Reed's ineffectiveness claim.

DISCUSSION

We begin, as did the Court of Appeals, with a discussion of our appellate jurisdiction. Our review over jurisdictional issues is unlimited. *In re T.S.W.*, 294 Kan. 423, 432, 276 P.3d 133 (2012).

The State argues that this court lacks jurisdiction to consider Reed's claim of ineffective assistance of counsel because he raised the issue for the first time in an untimely motion for new trial. According to the State, the district court lacked jurisdiction to consider the untimely motion, and an appellate court cannot thereafter acquire jurisdiction to consider the issue.

Under K.S.A. 2014 Supp. 22-3501(1), a criminal defendant has 14 days after the verdict to file a motion for new trial when that motion is not based on newly discovered evidence. Within that 14-day period, a district court may extend the deadline. Otherwise, the deadline is not discretionary. See *State v. Holt*, 298 Kan. 469, 479, 313 P.3d 826 (2013). Reed's "Supplemental Motion for New Trial" fell well outside the 14-day period.

When the jurisdictional argument arose in the district court, the judge elected to treat Reed's supplemental motion as one filed under K.S.A. 60-1507 and reached the merits of the ineffective assistance of counsel claim after holding an evidentiary hearing. Because Reed had yet to be sentenced, strictly speaking, K.S.A. 60-1507 was inapplicable. See *Baker v. State*, 297 Kan. 486, 491, 303 P.3d 675 (2013) (K.S.A. 60-1507 does not permit relief when movant not in custody under sentence being challenged).

Generally a district court properly refuses to consider issues raised for the first time in an untimely motion for new trial. But a claim of ineffective assistance of counsel is unique for at least two reasons. First, if counsel truly has been ineffective during the course of a trial, it is illogical to conclude that his or her ineffectiveness will be erased or improved upon when it comes time to file a motion for new trial. Second, and more important, a claim of ineffective assistance of trial counsel is treated differently from many other issues when raised for the first time on appeal.

When presented with a defendant's argument—raised for the first time on appeal—that trial counsel was ineffective, Kansas appellate courts dispose of such claims in one of three ways. First, an appellate court may follow the general rule and decline to address the issue, leaving the defendant to pursue relief through a timely K.S.A. 60-1507 motion. See *State v. Levy*, 292 Kan. 379, 388-89, 253 P.3d 341 (2011). Second, the appellate court may remand to the district court for examination of the issue in further

9

proceedings pursuant to *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986). See *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014) ("The usual course of action is a request by appellate counsel for remand to district court for a hearing on the ineffective assistance claim."). Finally, although rare, "'there are circumstances when no evidentiary record need be established, when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious,' and an ineffectiveness claim can therefore be resolved" by an appellate court. 298 Kan. at 839 (quoting *Rowland v. State*, 289 Kan. 1076, 1084-85, 219 P.3d 1212 [2009]); see *State v. Carter*, 270 Kan. 426, 433, 14 P.3d 1138 (2000) (remand would serve no purpose where assessment by trial court unnecessary because record on appeal sufficiently complete for appellate court to decide issue).

In support of its argument on lack of jurisdiction, the State relies on *State v. Myrick & Nelms*, 228 Kan. 406, 616 P.2d 1066 (1980). It is not helpful.

In *Myrick*, defendant Walter Myrick filed a motion for new trial within the then-10-day time limit. The motion was denied, and Myrick filed a timely notice of appeal. Nearly 9 months later, Myrick filed a second motion for new trial alleging newly discovered evidence, ineffective assistance of counsel, and various other trial errors. Although the matter of newly discovered evidence was properly raised in the second motion for new trial because of what was then a longer statutory time limit for such a claim, the other issues Myrick raised were untimely. Without discussing the district judge's action on the untimely claims, this court refused to entertain the claims on appeal. The court merely noted that "[m]atters allegedly in violation of either the United States Constitution or the Kansas Constitution may, of course, be raised in a separate proceeding pursuant to K.S.A. 60-1507." 228 Kan. at 423.

Although a more complete description of the district court outcome on the ineffectiveness claim would have been helpful, we interpret the cited passage in *Myrick*

10

*& Nelms* merely to stand for the unremarkable general proposition that an issue of ineffective assistance of counsel unaddressed in district court cannot be raised for the first time on appeal. We also note that it predated this court's *Van Cleave* decision. Thus remand for district court consideration of the ineffectiveness claim was not yet an option.

The State also contends that *State v. Kirby*, 272 Kan. 1170, 39 P.3d 1 (2002), provides no support for the existence of jurisdiction because it was wrongly decided.

In *Kirby*, defendant Leonard B. Kirby's trial counsel filed a motion for new trial in conformity with the then-10-day time limit of K.S.A. 22-3501(1). On the date of the motion hearing, which fell outside of the 10-day time limit, Kirby filed a pro se amendment in support of the motion for new trial and added an issue of ineffective assistance of counsel. The district court heard a "thorough discussion" on the claim of ineffective assistance at the hearing. 272 Kan. at 1194. On appeal, the State argued that Kirby's pro se attempt to amend was untimely and that this court should not review the merits of the ineffective assistance issue. Relying on *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), this court did reach the merits, treating the claim as though it had been raised in a K.S.A. 60-1507 collateral attack. *Kirby*, 272 Kan. at 1192-94. In *Kingsley*, this court had considered a defendant's right to counsel during a hearing on what was labeled a pro se motion for new trial that had been filed outside of the statutory time limit but before appeal. The court observed that the motion, in fact, "defie[d] characterization." 252 Kan. at 767. Regardless, following the State's urging, the *Kingsley* court analogized the defendant's ineffective assistance-based motion to a collateral attack by a felony defendant in custody after sentencing and ruled that a district judge need not appoint new counsel until satisfied that the motion presented substantial questions of law or triable issues of fact. 252 Kan. at 766-67 (citing K.S.A. 22-4506).

In this case, the district judge may have jumped the procedural gun when he held an evidentiary hearing on Reed's ineffective assistance of counsel claim. But his eagerness did not deprive him or this court of subject matter jurisdiction to consider the claim. In fact, the district judge considered the ineffective assistance claim at a time when evidence concerning it was bound to be most accessible and fresh. Reed already had new counsel representing his interests. There is no reason to believe that the outcome in the district court would have been improved or otherwise different if the district judge had waited to weigh in until a *Van Cleave* remand. In this situation, both the Court of Appeals and this court have had the advantage of a full transcript of the evidentiary hearing in the record on appeal.

At oral argument, counsel for the State also argued that *Van Cleave* should be overruled. This argument appears nowhere in the State's brief, and we are not required to consider it. See *Tolen v. State*, 285 Kan. 672, 675, 176 P.3d 170 (2008). The State will, of course, be free to demonstrate what it believes to be the error of *Van Cleave* in a future case, when full briefing has been provided.

Since the State filed its brief in this matter, we have decided *State v. Sharkey*, 299 Kan. 87, 94-96, 322 P.3d 325 (2014), which cited *Kirby* and *Kingsley* on its way to deciding that a timely motion for new trial is a critical stage of a criminal proceeding under K.S.A. 22-4503 that requires counsel participating for the defendant, while an untimely motion is considered under K.S.A. 22-4506, which applies to collateral attacks. In other words, *Kirby* remains good law. And as the last Court of Appeals panel to address the issue has recognized, untimeliness of a motion for new trial is a procedural flaw that may affect the defendant's right to counsel; but it does not deprive the district court or a later appellate court of jurisdiction. See *State v. Reynolds*, No. 109,674, 2014 WL 6909523, at *9 (Kan. App. 2014) (unpublished opinion).

12

Having resolved the threshold question, we now turn to the issues in Reed's petition.

*Public Trial Violation*

The determination of whether a defendant's Sixth Amendment right to a public trial under the United States Constitution was violated is a question of law over which an appellate court has unlimited review. *State v. Cox*, 297 Kan. 648, 655, 304 P.3d 327 (2013).

We recently discussed a defendant's fundamental right to a public trial and the steps that parties and the district court must take before closure.

> """The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury."' *State v. Kirby*, 272 Kan. 1170, 1196, 39 P.3d 1 (2002) (quoting *State v. Jenkins*, 269 Kan. 334, 337, 2 P.3d 769 [2000]). This court has stated:
>
>> "'One of the fundamental rights of a criminal defendant is his right to a public trial. Trial court proceedings are generally required to be open and public, and a public trial is one which is public in the ordinary, common-sense meaning of the term. A public trial is not solely a private right of the parties, but one involving additional interests, including those of the public. The concept of a public trial implies that doors of the courtroom be kept open and that the public, or such portion thereof as may be conveniently accommodated, be admitted, subject to the right of the court to exclude objectionable characters. *State v. McNaught*, 238 Kan. 567, 577, 713 P.2d 457 (1986) (citing 75 Am. Jur. 2d, Trial § 33, p. 146).

"This right, while fundamental, is not inviolate. The United States Supreme Court has consistently held that

""the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." [Citation omitted.] "Such circumstances will be rare, however, and the balance of interests must be struck with special care."' *Presley v. Georgia*, 558 U.S. 209, 213, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010) (quoting *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 [1984]).

"The watershed case of *Waller* set out an oft-cited, four-part test:

"'[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.' 467 U.S. at 48.

"See *Presley*, 558 U.S. at 212-15; *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 511, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

"Kansas courts have employed this test in evaluating whether the Sixth Amendment right to a public trial has been violated. See *State v. Dixon*, 279 Kan. 563, 597, 112 P.3d 883 (2005), *overruled on other grounds by State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010)." *Cox*, 297 Kan. at 655-56.

The closure at issue in *Cox* followed the State's request to close the courtroom to spectators while pictures of the child victims' genitalia were exhibited and discussed during the State's presentation of evidence. The district court judge ordered the closure over defense counsel's objection. This court held that the district judge's "wholesale

14

closure of the courtroom during the presentation of this evidence, in the absence of the State or the judge expressing any 'overriding interest' combined with the lack of meaningful consideration of alternatives, violated Cox's Sixth Amendment right to a public trial. [Citations omitted.]" 297 Kan. at 656.

In this case, before the Court of Appeals, the State argued that Reed failed to preserve this issue for appellate review when his counsel failed to object. We had no problem dismissing a similar argument raised by the State in *Cox*, because the record clearly reflected defense counsel's "concern for 'cutting off [] a public trial'" and his noted objection to the closed trial proceedings. 297 Kan. at 654-55.

Here the Court of Appeals panel concluded that Reed's defense counsel invited the error because he suggested the closure and thereby waived Reed's right to a public trial. *Reed*, 2013 WL 451900, at *11. The invited error doctrine is inapplicable when the claimed constitutional error is structural. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Moreover, we do not read defense counsel's statement about emptying the courtroom to be an invitation to err here. Defense counsel suggested this alternative only after the prosecutor had recommended that the questioning of Becknell occur in the district court's law library and the district judge had indicated a willingness to proceed in that fashion. It was counsel for the State who first suggested a closed proceeding to the public.

We also note that the Court of Appeals has held that, because the right to a public trial is a fundamental right, an appellate court may consider an appellate claim that the right was denied, even without a contemporaneous objection at trial. See *State v. Barnes*, 45 Kan. App. 2d 608, Syl. ¶ 2, 251 P.3d 96 (2011). We need not delineate today to what extent defense counsel may waive a defendant's right to a public trial because our resolution turns on the preliminary question of whether there was any right to waive at

15

all. But we recognize that a majority of jurisdictions have held that defense counsel may waive the right, and that these jurisdictions differ on how involved the defendant must be in that decision. See *Walton v. Briley*, 361 F.3d 431, 433-34 (7th Cir. 2004) (right to public trial may be relinquished only upon showing defendant knowingly, voluntarily waived right; "heightened standard of waiver" applies); *State v. Overline*, 154 Idaho 214, 219, 296 P.3d 420 (Ct. App. 2012) (public trial subject to waiver by defense counsel, forfeiture by failure to object); *Commonwealth v. Lavoie*, 464 Mass. 83, 88-89, 981 N.E.2d 192 (2013) (counsel may waive right to public trial during jury selection with or without defendant's express consent); *State v. Wise*, 176 Wash. 2d 1, 15, 288 P.3d 1113 (2012) (failure to object to closure not waiver of right to public trial under state Constitution); see also Bernabe, *Waiving Good-Bye to A Fundamental Right: Allocation of Authority Between Attorneys and Clients and the Right to A Public Trial*, 38 J. Legal Prof. 1, 10 (Fall 2013). Suffice it to say today that the safest course for Kansas criminal defense counsel is to object to any closure if there is a need to preserve the issue for appeal.

As stated, this case ultimately turns on whether Reed's Sixth Amendment right to a public trial attached to the questioning of Becknell. We hold that it did not.

The scope and limits of a defendant's Sixth Amendment right to a public trial are issues that have turned up infrequently before this court.

> "The Sixth Amendment guarantee of a public trial applies to the entire trial of an accused, including [certain] pretrial hearings. A trial, for this purpose, consists of the proceedings for impanelment of the jury, the opening statements of counsel, presentation of evidence, arguments, instructions to the jury, and return of the verdict." 21A Am. Jur. 2d Criminal Law § 969, pp. 192-93.

16

Not every proceeding is subject to the Sixth Amendment's demand for openness. See, *e.g.*, *State v. Smith*, 181 Wash. 2d 508, 511, 334 P.3d 1049 (2014) (sidebars do not implicate public trial right). In the jurisdictions that have addressed whether a defendant's public trial right reaches a particular proceeding or trial procedure, an assortment of tests has emerged.

In *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986), the Supreme Court of the United States discussed an "experience and logic" test for deciding a claim of open access to criminal proceedings under the First Amendment. Under the first prong of the two-part test, a court asks "whether the place and process have historically been open to the press and general public." 478 U.S. at 8. Under the second prong, a court considers "whether public access plays a significant positive role in the functioning of the particular process in question." 478 U.S. at 8. The court is to consider whether openness in the proceeding "'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" 478 U.S. at 9.

Although *Press-Enterprise Co.* arose out of a press challenge to court closure under the First Amendment rather than a criminal defendant's challenge under the Sixth Amendment, the Washington Supreme Court has applied it in the Sixth Amendment public trial context. See *State v. Sublett*, 176 Wash. 2d 58, 73, 292 P.3d 715 (2012); see also *Freitas v. Administrative Dir. of Courts*, 104 Hawaii 483, 488-89, 92 P.3d 993 (2004) (applying test to driver's license revocation hearing); *Commonwealth v. Riley*, 86 Mass. App. 309, 313, 15 N.E.3d 1165 (2014) (identifying test as proper under Sixth Amendment). But the test is not without its critics when applied beyond a First Amendment setting. See *Smith*, 181 Wash. 2d at 528 (Wiggins, J., concurring in result) ("[T]he test is difficult to apply on any principled basis and so vague that the result of applying it can easily appear contrived.").

The Ninth Circuit Court of Appeals has focused on values served by a public trial, as identified by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 46-47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

"We have previously stated that the public-trial right attaches to those hearings whose subject matter 'involve[s] the values that the right to a public trial serves.' *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003). Those values are:

"'(1) to ensure a fair trial, (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward, and (4) to discourage perjury.'

*Id*. (quoting *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996))." *United States v. Waters*, 627 F.3d 345, 360 (9th Cir. 2010).

In *Waters*, the Ninth Circuit considered a defendant's challenge to the district court's closure of the courtroom during an "'omnibus' pretrial hearing." 627 F.3d at 359. The court drew guidance from *Waller*'s discussion of suppression hearings.

"It is well established that the Sixth Amendment right to a public trial attaches to suppression hearings. The Supreme Court has held as much: 'The[ ] aims and interests [of the right to a public trial] are no less pressing in a hearing to suppress wrongfully seized evidence . . . . [S]uppression hearings often are as important as the trial itself.' *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). Not only is a motion to suppress a fundamentally important stage of the trial, but the public also has an interest in having allegations of government misconduct heard in an open forum.

"'The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor. As the

18

Court of Appeals for the Third Circuit has noted, "[s]trong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining" the evidence. The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny.'

*Id*. at 47, 104 S. Ct. 2210 (internal citation omitted).

"The hearing in this case was not technically a suppression hearing. Nevertheless, we believe that the hearing implicated the values outlined above, and we therefore conclude that Waters' hearing should have been open to the public.

"One major issue the district court heard at the omnibus hearing was Waters' motion to dismiss the indictment for government misconduct. In many respects, this motion resembled a motion to suppress evidence. Waters' motion directly challenged the tactics the government used in investigating her case. *Cf. Ivester*, 316 F.3d at 960 (affirming closure of pretrial hearing based in part on fact that the defendant 'did not attack the government'). The hearing would therefore have benefitted from the 'salutary effects of public scrutiny.' *Waller*, 467 U.S. at 47, 104 S. Ct. 2210. Opening the hearing to the public might have encouraged other witnesses to come forward and discouraged perjury. Further, as with any allegation of misconduct, government agents must be reminded of their 'responsibility to the accused and the importance of their function.' *Id*. Last but not least, the public has an interest in learning of all allegations of government misconduct, including prosecutorial misconduct." *Waters,* 627 F.3d at 360-61.

Similarly, in *United States v. Norris*, 780 F.2d 1207, 1210 (5th Cir. 1986), the United States Court of Appeals for the Fifth Circuit looked at whether the "concerns expressed by *Waller* underlying the right to a public trial" were implicated in the closed proceedings at issue.

"The private aspects of Norris' trial that he complains of consist entirely of the arguments of counsel and rulings by the court on technical legal questions. Non-public exchanges

19

between counsel and the court on such technical legal issues and routine administrative problems do not hinder the objectives which the Court in *Waller* observed were fostered by public trials. Unlike the trial of a suppression motion, such exchanges ordinarily relate to the application of legal principles to admitted or assumed facts so that no fact finding function is implicated. A routine evidentiary ruling is rarely determinative of the accused's guilt or innocence. Also, such evidentiary rulings ordinarily pose no threat of judicial, prosecutorial or public abuse that a public trial is designed to protect against." *Norris*, 780 F.2d at 1210-11.

Finally, in *United States v. Vazquez-Botet*, 532 F.3d 37, 51-52 (1st Cir. 2008), the United States Court of Appeals for the First Circuit noted that defendants had failed to identify any jurisdiction that had extended the Sixth Amendment public trial right to an offer of proof hearing and then distinguished the challenged hearing from those hearings that implicate the Sixth Amendment.

"[T]he [offer of proof] hearing differed in at least two fundamental respects from the categories of non-trial hearings to which the Sixth Amendment public-trial right has been held to apply in the past, such as hearings on motions to suppress, see, *e.g.*, *Waller*, 467 U.S. at 47, 104 S. Ct. 2210, and jury-selection proceedings, see, *e.g.*, *Owens*, 483 F.3d at 62. First, the evidence elicited at the hearing had already (correctly) been ruled irrelevant. *Cf. Brown v. Kuhlmann*, 142 F.3d 529, 541 (2d Cir.1998) (courtroom closure during trial did not infringe Sixth Amendment rights where it involved cumulative testimony related to matter collateral to charged offense). Second, the district court was under no obligation to hold the hearing in the first place, but chose to do so for our and the defendants' benefit when confronted with Vázquez's eleventh-hour request.

"These differences render the Sixth Amendment precedent invoked by the defendants inapposite in the circumstances. While we leave open the possibility that the public-trial right may apply to some offer-of-proof hearings, we decline to recognize such a right on facts as uncompelling as these." *Vazquez-Botet*, 532 F.3d at 52.

We are influenced by the *Press-Enterprise* logic and experiences test and by the analysis articulated by the federal courts cited above and hold that the district judge's inquiry into Becknell's willingness to testify was not a part of the prosecution in which Reed's Sixth Amendment right to a public trial was implicated.

We also are influenced by Justice William J. Brennan's concurrence in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980):

> "The presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interests of decorum. *Cf. Illinois v. Allen*, 397 U.S. 337[, 90 S. Ct. 1057, 25 L. Ed. 2d 353] (1970). Thus, when engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle. Nor does this opinion intimate that judges are restricted in their ability to conduct conferences in chambers, inasmuch as such conferences are distinct from trial proceedings."

The inquiry into whether Becknell would testify in the face of contempt of court was "distinct from trial proceedings," notwithstanding the fact that it was conducted in the courtroom rather than in the judge's chambers or the law library. See *People v. Olivero*, 289 A.D.2d 1082, 1082, 735 N.Y.S.2d 327 (2001) (no violation of defendant's right to public trial when court closed courtroom and conducted equivalent of conference in chambers concerning scope of testifying witness' immunity). Whether Becknell would testify was a collateral matter concerning a question of law. See *State v. Sanders*, 258 Kan. 409, 418, 904 P.2d 951 (1995) ("When the unavailability of a witness becomes an issue, whether the witness is unavailable is a question of law."). And there were no allegations of government misconduct that required circulation in the fresh air that accompanies public observation. See *Waller*, 467 U.S. at 47. This feature of Reed's

21

prosecution was more comparable to a sidebar, and Reed's Sixth Amendment right to a public trial did not attach and could not be violated.

Seeing no error, we need not reach the further question of harmlessness.

*Ineffective Assistance of Counsel*

Reed challenges the panel's holding that Reed's trial counsel was not ineffective. As discussed above, we have jurisdiction to entertain Reed's claims of ineffective assistance of counsel.

"A claim alleging ineffective assistance of counsel presents mixed questions of fact and law requiring de novo review. Consequently, appellate courts review the underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013).

"To establish ineffective assistance of counsel, the defendant must establish (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Cheatham*, 296 Kan. at 431.

"Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the

22

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Cheatham*, 296 Kan. at 431." *State v. Burnett*, 300 Kan. 419, 452, 329 P.3d 1169 (2014).

Reed argues first that the panel erred when it concluded that trial counsel's waiver of Reed's constitutional and statutory right to confront Becknell was strategic and that Reed had a prior opportunity to confront Becknell at the preliminary hearing. The panel's decision on this point underlay its ultimate holding that Reed's counsel was not ineffective for failing to object to the district judge's determination that Becknell was unavailable. Second, Reed argues that the panel erred when it held that trial counsel was not ineffective for failing to object when the prosecutor elicited testimony from Price that he was testifying truthfully, as required by his plea agreement. We address Reed's two arguments in turn.

Reed relies on *State v. Jefferson*, 287 Kan. 28, 194 P.3d 557 (2008), to support his assertion that Becknell did not qualify as unavailable. According to Reed, the district judge was required to order Becknell to testify under threat of contempt before declaring Becknell to be unavailable. Reed does not explain how his trial counsel's allegedly deficient performance in failing to object prejudiced him at trial.

Addressing this argument, the Court of Appeals panel said:

"In *State v. Jefferson*, 287 Kan. 28, 34-39, 194 P.3d 557 (2008), our Supreme Court found that a witness who refuses to testify may be deemed unavailable for the purposes of the hearsay exception. See also *State v. Terry*, 202 Kan. 599, 603, 451 P.2d 211 (1969) (Witnesses who refuse to testify are 'just as "unavailable" as though [their] physical presence could not have been procured—for, as a practical matter—[their] testimony was unavailable—thus bringing the matter clearly within the exception to the constitutional confrontation rule.').

23

"Reed insists that *Jefferson* requires the district court to order a refusing witness to testify under threat of contempt as a prerequisite to a finding of unavailability. Because the district court, in Reed's case, did not specifically order Becknell to testify under threat of contempt, then the determination that Becknell was an unavailable witness was inappropriate and his attorney was ineffective for not objecting.

"However, Reed reads *Jefferson* too broadly. The only portion of the *Jefferson* opinion in which the court discussed the requirement that the district court specifically order the witness to testify under threat of contempt was during the court's reference to the federal rules of evidence. See Fed. R. Evid. 804(a)(2). But this discussion came after the court had already determined that the district court had not erred in determining the witness unavailable because of his refusal to testify. It appears that the court was merely suggesting that its decision would be supported by the federal rules of evidence. *Jefferson*, 287 Kan. at 38. There does not appear to be any particular requirement under *Jefferson* that a district court must specifically order a witness to testify under threat of contempt before the witness can be deemed unavailable. The court's decision involves a case-by-case determination." *Reed*, 2013 WL 451900, at *8-9.

The panel's discussion of *Jefferson* is sound. A court order to testify in the face of contempt is not an indispensable condition for a finding of unavailability. See *State v. Terry*, 202 Kan. 599, 603, 451 P.2d 211 (1969) (witnesses each "flatly refused to testify"; no suggestion in record witnesses ordered to testify; witnesses unavailable); see also *State v. Gleason*, 299 Kan. 1127, 1166, 329 P.3d 1102, 1132 (2014) (court ordered witness to testify; witness' "adamant refusal to testify rendered him unavailable").

The standard for appellate review of a district court decision that a witness is unavailable to testify is abuse of discretion. *State v. Breedlove*, 295 Kan. 481, 488, 286 P.3d 1123 (2012). The Court of Appeals panel discussed the steps taken by the district judge before determining Becknell was unavailable:

24

"In this case, before determining Becknell was unavailable, the district court discussed Becknell's duty to testify and advised him that the court could find him in contempt if he refused. In spite of this warning, Becknell continued to refuse to testify. Merely because the district court did not specifically order Becknell to testify and find him in contempt for refusing to do so does not make Becknell's testimony any less unavailable. The district court was in the best position to observe Becknell's demeanor and judge whether his refusal was sincere and intractable." *Reed*, 2013 WL 451900, at *9.

The district judge did not abuse his discretion when he determined Becknell was unavailable, and Reed's claim that his trial counsel was ineffective for failing to object to that decision is without merit.

Reed also argues that his trial counsel was ineffective for waiving Reed's right of confrontation by allowing the State to read Becknell's preliminary hearing testimony to the jury is premised on his assertion that "the motive and interest in trial counsel's cross-examination of Becknell at preliminary hearing was not similar to that at the trial where Becknell's preliminary hearing testimony was offered."

"The Sixth Amendment right of confrontation is satisfied if the accused confronted the witnesses against him at any stage of the proceedings in the same case and has had an opportunity of cross-examination." *State v. McCray*, 267 Kan. 339, 353, 979 P.2d 134 (1999); see *State v. Stano*, 284 Kan. 126, 141, 159 P.3d 931 (2007).

"This principle is also codified in K.S.A. 2006 Supp. 60-460(c)(2)(B), which provides for the admission of 'testimony given as a witness in . . . a preliminary hearing or former trial in the same action' when the witness is unavailable and 'the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the

25

action in which the testimony is offered,' as long as it does not 'den[y] to the accused the right to meet the witness face to face.'" *Stano*, 284 Kan. at 142.

Reed points out that his trial counsel testified that he wanted to assess Becknell's appearance and demeanor during the preliminary hearing. Reed asserts that this contrasts with trial counsel's interest and motive to discredit Becknell's version of events during trial.

We have rejected such an argument in the past, observing that the interest and motive of the adverse party on the prior occasion for cross-examination of a witness need only be similar, not identical, to the interest and motive at a later point. See *Stano*, 284 Kan. at 144-45. Here, at both the preliminary hearing and at trial, Reed was defending against the charges on which he was eventually convicted. This similarity is adequate to satisfy the statute. Moreover, it is Reed's interest and motive, not his attorney's, that define the proper focus. There was no violation in this case when the unavailable victim's prior preliminary hearing testimony was admitted at the defendant's trial. Defense counsel was not ineffective for allowing the admission. Reed is the adverse party here.

Again, Reed's second basis for asserting ineffective assistance of trial counsel stems from defense counsel's failure to object when the prosecutor elicited testimony from Price that he was testifying truthfully. The Court of Appeals panel held that the prosecutor was merely attempting to establish the terms of Price's plea agreement and did not commit misconduct; thus Reed's claim of ineffectiveness for failing to object was without merit. *Reed*, 2013 WL 451900, at *16.

26

Reed now objects to the following exchange between the prosecutor and Price:

"Q. Well, Mr. Price, I'm asking you what the plea agreement says and I'm asking you to look at paragraph D.

"A. It says the State recommends to give me—to recommend—

"Q. I'm talking about your part of the responsibility.

"A. Well, got to testify.

"Q. *And how—do you have to testify truthfully?*

"A. Yes, it says testify truthfully as I'm sworn in.

"Q. *And is that why you're testifying today to testify truthfully, Mr. Price?*

"A. Yes." (Emphasis added.)

Challenges to a prosecutor discussing the terms of a plea agreement have usually arisen in the context of prosecutorial misconduct claims, and cases discussing such claims provide context here.

> "'Generally, prosecutors cannot offer juries their personal opinions on the credibility of witnesses. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). We prohibit the prosecutor from expressing personal opinions on the credibility of a witness because such comments are "unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000).' *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 (2011).

27

*But mere reference to the terms of a witness' plea agreement does not constitute misconduct*. See *State v. Kraus*, 271 Kan. 810, 821-22, 26 P.3d 636 (2001); *State v. Edwards*, 39 Kan. App. 2d 300, 310-11, 179 P.3d 472, *rev. denied* 286 Kan. 1181 (2008)." (Emphasis added.) *State v. Peppers*, 294 Kan. 377, 396-97, 276 P.3d 148 (2012).

In *State v. Brinklow*, 288 Kan. 39, 47-48, 200 P.3d 1225 (2009), the defendant argued that the prosecutor had improperly bolstered the victim's credibility by inquiring whether she knew the difference between the truth and a lie, whether she agreed to tell only the truth, and whether her testimony she gave was "the truth, the whole truth, and nothing but the truth." This court noted that in light of the fact that the witness had already sworn an oath in front of the jurors to tell the truth, the subsequent questioning about telling the truth may have been cumulative, but it did not constitute prosecutorial misconduct.

We have "plainly said that '[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper' because weighing the credibility of witnesses 'is the province of the jury.'" *State v. Crum*, 286 Kan. 145, 151-52, 184 P.3d 222 (2008) (quoting *State v. Manning*, 270 Kan. 674, 698, 19 P.3d 84 [2001]). The rationale for prohibiting such questions is that they are argumentative and seek information beyond the witness' competence. *Crum*, 286 Kan. at 151-52. But we have declined to hold that a witness' comments about his or her own credibility are improper. *Brinklow*, 288 Kan. at 47 ("Brinklow points us to no authority for his argument that, if it is improper for a witness to comment on another witness' credibility, it must be similarly improper for the witness to comment on her own credibility."). And Reed fails to cite any authority to support such a proposition.

The first question posed by the prosecutor merely inquired about a term of the plea agreement. That question was proper. See *Peppers*, 294 Kan. at 397. The prosecutor's

28

follow-up question, even if read to ask whether Price would testify truthfully, was at most cumulative of the oath Price had already taken in front of the jury. See *Brinklow*, 288 Kan. at 48. Trial counsel's failure to object under these circumstances did not fall below an objectively reasonable performance.

At oral argument, Reed argued that his public trial challenge and ineffective assistance of trial counsel claim were intertwined and that trial counsel's failure to object to the closed proceeding further supported his claim of ineffectiveness. As discussed above, because that part of the proceeding was not objectionable on the basis of Reed's right to a public trial, trial counsel was not ineffective for failing to object.

*Downward Departure*

In its cross-appeal, the State argues that the district judge's decision to grant a downward durational departure impermissibly relied on disparity between the date of parole eligibility when a defendant receives a presumptive sentence for attempted first-degree murder and the date of parole eligibility when a defendant has completed a first-degree murder.

This court's standard of review for departure decisions depends on the precise issue presented. *State v. Bird*, 298 Kan. 393, 397, 312 P.3d 1265 (2013).

> "When we consider whether the record supports an articulated reason for departing, we review for substantial competent evidence. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). In contrast, when we determine whether a particular factor can 'ever, as a matter of law, be substantial and compelling in any case,' our review is unlimited. 291 Kan. at 807. Finally, when the record supports the articulated departure reasons and the articulated reasons are legally valid, we apply an abuse of discretion standard to

determine whether a particular mitigating factor constituted a substantial and compelling reason to depart. 291 Kan. at 807." *Bird*, 298 Kan. at 397-98.

If abuse of discretion is the governing standard, we have held that judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

In *Bird*, we explained:

"A sentencing court is required to 'impose the presumptive sentence provided by the sentencing guidelines . . . unless the judge finds substantial and compelling reasons to impose a departure.' K.S.A. 21-4716(a). 'To be substantial the reason must be real, not imagined, and of substance, not ephemeral.' *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). A reason is 'compelling' when it 'forces the court, by the facts of the case, to abandon the status quo and to venture beyond the sentence that it would ordinarily impose.' 285 Kan. at 724.

"Although K.S.A. 21-4716(c) contains a list of potential departure factors, the list is nonexclusive, and a sentencing court can rely on nonstatutory factors to depart as long as the factors are consistent with the principles underlying the KSGA. See 285 Kan. at 725. Regardless of whether the district court cites statutory factors, nonstatutory factors, or a combination of both, "'[r]easons which may in one case justify departure may not in all cases justify a departure."' *State v. McKay*, 271 Kan. 725, 730, 26 P.3d 58 (2001) (quoting *State v. Grady*, 258 Kan. 72, 83, 900 P.2d 227 [1995])." *Bird*, 298 Kan. at 397.

30

Before the Court of Appeals, the State argued that "the district court's sole reason for granting Reed's downward durational departure was . . . disparity between the parole eligibility in the presumptive sentence for attempted first-degree murder and completed first-degree murder." *Reed*, 2013 WL 451900, at \*21. The panel did not specifically address whether the disparity could *ever* be a substantial and compelling factor warranting departure. Instead, it skipped over this question and concluded that the district judge also had relied on the criminal conduct reflected in Reed's criminal history, Reed's age at the time of his crimes, and the public safety risk Reed presented. Based on the existence of these additional factors, the panel held that the district judge did not abuse its discretion in granting the departure motion. 2013 WL 451900, at \*22.

In its petition for review, the State argues that the transcript of the sentencing hearing does not support the panel's holding. The State also cites this court to *State v. Hines*, 296 Kan. 608, 294 P.3d 270 (2013), for support of what must be understood as its argument that the parole eligibility disparity relied upon at least in part by the district judge can never be part of the departure calculus.

At the sentencing hearing, the district judge stated: "[T]he basis for my granting the departure motion principally is the disparity that exists between the sentencing guidelines grid and the penalty that would be imposed for the completed crime, which I think is a valid consideration to make."

In *Hines*, this court recognized a district judge's statutory duty to state the basis for imposing a departure sentence on the record, as well as the judge's responsibility to make findings of fact on the reasons for departure. 296 Kan. at 615 (citing K.S.A. 21-4716[a]; K.S.A. 21-4718[a][4]). "'[U]nder the mandate of these provisions, the court's findings at the time of sentencing govern as to the reasons for departure.'" *Hines*, 296 Kan. at 615 (quoting *State v. Blackmon*, 285 Kan. 719, 729, 176 P.3d 160 [2008]). This court then

31

looked to the sentencing transcript and noted that, although the sentencing court had stated it had "'take[n] into account all the facts and circumstances of the case,' the [sentencing] court explicitly stated that [the victim's] request for leniency was 'the reason' for imposing a downward durational departure sentence." 296 Kan. at 615-16. We rejected defendant Matthew M. Hines' assertion on appeal that the sentencing judge had implicitly found the reasons set out in the written departure motion to constitute substantial and compelling reasons for departure. We then considered whether a victim's request for leniency could *ever* be a substantial and compelling reason for departure, standing alone.

According to the State, *Hines* "indicated that any catch-all type language indicating that the district court had 'take[n] into account all the facts and circumstances of the case,' could not supplant the district court's affirmative duty as stated in K.S.A. 21-4716(a) and K.S.A. 21-4718(a)(4)." The State argues that the panel "relied upon catch-all language similar to that rejected by this court in *Hines* to find that the court 'took more into consideration than just Reed's sentencing disparity argument.'"

In its opinion, the panel discussed the issues raised in Reed's departure motion and the "possible mitigating factors" Reed offered at sentencing for the district court's consideration. *Reed*, 2013 WL 451900, at *21. Presumably, this discussion was designed to support the panel's conclusion that the district judge considered more than Reed's disparity argument. But, absent articulation of findings consistent with the motion and arguments, the motion and arguments remain merely that, not findings of the court. See *Hines*, 296 Kan. at 616; *Blackmon*, 285 Kan. at 725.

The State insists that "[t]he district court's belief that the sentencing guidelines have incorrectly determined the length of a particular sentencing range is not a substantial and compelling reason to justify a departure sentence." According to the State, "the

32

district court's departure factor concerned the actions of the legislature, not [Reed's] individual circumstances." We agree. To the extent that the district judge relied on any disparity in the sentencing guidelines between the parole eligibility dictated for an attempted crime and a completed crime, it was legal error to do so. See *State v. Heath*, 21 Kan. App. 2d 410, Syl. ¶ 5, 901 P.2d 29 (1995) ("A trial court's general disagreement with the Kansas Sentencing Guidelines Act and/or its belief that the legislature may have incorrectly classified a crime are not substantial and compelling reasons for entering a departure sentence.").

> "The legislature has the exclusive role of providing for the punishment of convicted criminals. *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991). It follows that the legislature has the power to enact legislation reducing the punishment of convicted criminals or granting leniency to them. The legislative power to punish convicted criminals is controlled only by the Constitutions of the United States and of the State of Kansas." *Chiles v. State*, 254 Kan. 888, 897, 869 P.2d 707 (1994).

Moments before granting Reed's departure, the district judge discussed Reed's disparity argument and noted that Reed was 17 years old when he committed his earlier offenses. Thus it appears that the judge explicitly considered Reed's disparity argument and Reed's argument that his earlier offenses, apparently all stemming from a single incident and occurring relatively closely in time, had unfairly exaggerated his criminal history. The judge's remark that he could "understand an argument . . . could be made that [the earlier criminal conduct] should only be one person felony" instead of three and his ultimate decision to sentence Reed to a term consistent with that for an offender whose criminal history was C, *i.e.*, a person with only one person felony, supports this interpretation of the record.

In making the departure decision, the judge was free to consider the underlying circumstances of Reed's earlier offenses to mitigate the impact of what the judge

evidently believed was an unwarranted criminal history score. See *State v. Favela*, 259 Kan. 215, 236, 911 P.2d 792 (1995) (district court considered nature, facts of defendant's juvenile crimes; judge noted no felonies for adult; "sentencing court relied on this factor in a way in which the defendant's criminal history score did not take into account"). But, in the end, the judge failed to articulate this as one of his bases for departure.

The two additional factors the panel identified as possible mitigators, *i.e.*, Reed's age at the time of the charged crimes and what the judge evidently believed to be Reed's relatively low public safety risk, do not support the panel's decision to affirm the district judge's departure. The judge merely noted Reed's age as an acknowledged fact and stated:

> "With regard to Mr. Reed's age and the argument about him being only 17 when this one crime was committed involving the multiple counts of person felonies, I understand that. But I also very well understand the fact that there's a lot of people out there that are 15 going on 30. In other words, at 15 years of age you can make very calculated judgments, you can make calculated judgments, obviously, that [a]ffect other people and their lives. And in that regard, that's just a fact that I acknowledge."

On public safety risk, the district judge said:

> "I certainly understand that at this point in time Mr. Reed, if he were to be placed on probation today, he probably would be a serious public safety risk, given his criminal history, the possessions of firearm and a person felony. My experience on the parole board has [led] me to the conclusion that many people, after they've been in prison for a while, they get to a point where they just get tired of it all and they get out and they lead productive lives."

In the proper context, Reed's age may serve as part of the calculus in finding a substantial and compelling reason for departure. See *Favela*, 259 Kan. at 234-35, 237-38 (defendant's age, standing alone, cannot serve as substantial and compelling reason;

district court may consider age "as part of the entire package" and in context of defendant's relative immaturity). But the judge's mere speculation about Reed's future attitude toward whether crime does indeed pay, based on the judge's experience in a different position with other offenders, could not function as a substantial and compelling reason to depart.

Given these problems with the departure sentence, we vacate Reed's sentence and remand this case for resentencing. Should the district judge find a substantial and compelling reason to depart, the reason or reasons must be clearly stated on the record at the resentencing hearing, and appropriate findings must be made. See *Hines*, 296 Kan. at 624.

CONCLUSION

We affirm Reed's conviction for attempted first-degree murder. We vacate Reed's sentence and remand for resentencing. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part.