NOT DESIGNATED FOR PUBLICATION

No. 122,697

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TITUS LAFAYETTE THOMPSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court, TRISH ROSE, judge. Opinion filed May 28, 2021. Sentence vacated and case remanded with directions.

*Andrew R. Davidson*, assistant district attorney, Thomas R. Stanton, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

PER CURIAM: A jury convicted Titus Thompson of robbery, burglary, and aggravated burglary. The district court granted Thompson a downward durational departure sentence from his 154-month presumptive sentence. The State appeals the departure decision, challenging the sufficiency of the district court's findings and alleging mistakes of fact and law. Based on the district court's failure to state on the record the substantial and compelling reasons for departure, we vacate the sentence and remand for resentencing.

1

*Factual Background*

In October 2018, Titus Thompson and John Sullivan forced their way into Leon Levasseur's home in search of prescription pills. After entering, Thompson repeatedly demanded oxycodone, but Levasseur did not have any. And when Levasseur fell to the ground, the two men kicked him.

Thompson eventually took whatever prescription medications he could find. Thompson also forced Levasseur to unhook his television and pack some of his personal belongings in a box. Thompson then loaded the items into Levasseur's car.

Thompson then forced Levasseur into the vehicle with him, causing Levasseur's colostomy bag to be ripped from his body and smashed. Levasseur had his dog with him but he feared for its life, so he threw his dog out the car window. Thompson took Levasseur to another location where he was eventually able to escape.

In an unrelated event in October 2020, Richard Dickson found Thompson inside his storage shed trying to take his bicycle. When Dickson confronted him, Thompson dropped the bicycle and promptly walked away. But police located and arrested Thompson near Dickson's residence.

Thompson was charged with aggravated burglary and robbery based on his 2018 attack on Levasseur and the 2020 burglary of Dickson's shed. A jury later convicted him as charged.

Thompson's presentence investigation report (PSI) established that his criminal history score was B, thus his presumptive prison sentence was 154 months in prison. Thompson moved for a dispositional departure to non-prison sanctions and alternatively, a durational departure. As for the durational departure, Thompson asked to be sentenced

as if he had a criminal history score C. He based this request on the age of his criminal history, his drug addition, his plan for treatment, and his job prospects.

At the sentencing hearing, Thompson emphasized that his previous convictions included only two person felonies—in 1998 and 2001—so for almost 20 years he had no person felonies. Thompson also claimed to have reformed a great deal since his arrest sixteen months earlier. His attorney said that Thompson was "one of the few people who has talked proactively . . . not only about taking advantage of his time in custody, but actually having a plan for when he would be released." He asserted that Thompson had made a treatment plan, had located stable housing that would support his sobriety, had taken a drug assessment, and, per its recommendation, had begun outpatient treatment. Thompson admitted he caused "pain, heartache and grief" to his victim, family, and community, and explained that while awaiting trial he had participated in several programs and attended Bible study to better himself for his own sake and the sake of his family and community.

The State opposed the departure request, arguing Thompson's participation in such a violent crime disqualified him from a departure. The State maintained that no substantial and compelling reason to depart existed because the seriousness of his crimes and the harm he caused the victim outweighed any mitigating evidence that might support a departure. Instead, the State recommended a controlling sentence within the maximum range of 174 months' prison. The State highlighted the discrepancy between the 120-month sentence given to the woman who drove Thompson and Sullivan to Levasseur's home and the 72 months that Thompson would receive if the court granted his departure motion.

The district court initially denied Thompson's motion, finding his reasons were not substantial and compelling. The district court then began to sentence Thompson to 154 months in prison and 36 months' postrelease supervision. At that point, however,

Thompson's counsel asked the district court to clarify whether it was also denying Thompson's durational departure request. The court, believing that Thompson had moved only for a dispositional departure, took the matter under advisement.

About two weeks later, the district court reconvened and allowed Thompson to reargue his departure motion. Thompson again requested a durational departure based on a criminal history score C for the same reasons he had earlier provided. The State also kept its same position and objected to the departure request.

But the court granted Thompson's second request for a durational departure. It noted the seriousness of Thompson's crimes yet also recognized his arguments that he took responsibility and was working toward reform. The district court found that Thompson's reasons for departure merited "somewhat of a reduced sentence," providing the following rationale:

> "Substantial and compelling is a gray, with a capital G area, for the court as to what I can find are substantial and compelling reasons. Sometimes they are stronger than others. And while not strong to depart durationally, I do believe there is reason to do that, and that is what I will do."

Having found "substantial and compelling reasons to depart durationally," the district court sentenced Thompson to 71 months in prison and 36 months of postrelease supervision.

The journal entry of judgment cites different reasons for granting the departure:

> "A downward durational departure was granted based on the age of the prior person felony convictions from 2001; and the defendant has completed every available resource for reform while his incarceration in the Reno County Correctional Facility. He

4

has completed Decision Point, Anger Management, 24/7 Fatherhood Program and remains active in AA and NA. He also is currently enrolled in Financial Peace."

The State timely appeals. See K.S.A. 2020 Supp. 21-6820(a).

*Analysis*

The State argues that the district court abused its discretion by granting the durational departure. It challenges the decision as unsupported, contrary to the facts of the case, and inconsistent with the principles of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.

*Standard of Review*

We review a district court's decision to grant a departure from a presumptive sentence for an abuse of discretion. Generally, an abuse occurs when the decision is based on an error of fact, based on an error of law, or is unreasonable. See *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). But when a statute affirmatively requires the district court to act, our interpretation of a sentencing statute is a question of law, and the standard of review is unlimited. See *State v. Phillips*, 299 Kan. 479, 494, 325 P.3d 1095 (2014).

*Basic Legal Principles*

A sentencing judge must impose the presumptive sentence set by the KSGA, "unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 2020 Supp. 21-6815(a). This statute creates an affirmative duty for

court to state on the record at the time of sentencing the substantial and compelling reasons for the departure.

The court's statements in a journal entry cannot cure the district court's failure to comply with the statute, above. "'The court's comments at the time of sentencing, not the written journal entry, govern as to the reasons for departure.'" *State v. Spencer*, 291 Kan. 796, 811, 248 P.3d 256 (2011); *State v. Theurer*, 50 Kan. App. 2d 1203, 1215, 337 P.3d 725 (2014). So, we look to the sentencing hearings, not to the journal entry, be it consistent or otherwise.

The district court here noted the seriousness of Thompson's crimes but also heard Thompson's "efforts to accept responsibility and reform." Yet it gave the following rationale for its decision:

> "Substantial and compelling is a gray, with a capital G area, for the court as to what I can find are substantial and compelling reasons. Sometimes they are stronger than others. And while not strong to depart durationally, I do believe there is reason to do that, and that is what I will do."

Those are the only "substantial and compelling reasons to depart durationally" that the district court identified. We are perplexed as to how the judge could admit that the reasons to depart "are not strong," while finding them to be "substantial and compelling." "Compelling" means that the court is forced, by the facts of the case, to leave the status quo or go what is beyond ordinary. *State v. Reed*, 302 Kan. 227, 250, 352 P.3d 530 (2015). Reasons that are not strong do not force the court to depart and are not compelling.

The district court also generally stated that the "points made in [Thompson's] motion and at the [first sentencing] hearing . . . argue in favor of somewhat of a reduced

6

sentence," as support for its decision. But the district court denied Thompson's motion after hearing the points made at the first sentencing hearing, finding his reasons were *not* substantial and compelling.

And the vague allusion to Thompson's motion fares no better—a sentencing judge must do more than generally allude to a departure motion to comply with K.S.A. 2020 Supp. 21-6815(a). *State v. Whitesell*, 270 Kan. 259, 294, 13 P.3d 887 (2000). Here, as in *Whitesell*, the court's general and vague reference cannot meet the statutory requirement to state on the record at the time of sentencing the substantial and compelling reasons for the departure.

Our Supreme Court has held that "a defendant's acceptance of responsibility, as a matter of law, can be a mitigating factor supporting a sentencing departure in any case." *State v. Morley*, 312 Kan. 702, 711-12, 479 P.3d 928 (2021). And our court has found that "[r]ehabilitation efforts are a legitimate factor to consider for purposes of a downward durational departure." *State v. Hill*, No. 117,288, 2017 WL 4321288, at *3 (Kan. App. 2017) (unpublished opinion); *State v. Carriker*, No. 114,655, 2017 WL 2021411, at *7 (Kan. App. 2017) (unpublished opinion) (citing *State v. Crawford*, 21 Kan. App. 2d 859, 861, 908 P.2d 638 [1995] [approving downward dispositional departure sentence because defendant was maturing and less likely to commit crimes]). Similarly, the age of a conviction may be a compelling reason to depart. *State v. Heath*, 21 Kan. App. 2d 410, 415, 901 P.2d 29 (1995).

But "[t]his court will not review the record for aggravating factors which might have justified departure but which the district court failed to articulate." *Whitesell*, 270 Kan. at 294. Rather, we are "limited to considering only the articulated reasons for departure stated on the record at sentencing." *State v. Scuderi*, No. 107,114, 2013 WL 3791614, at *8 (Kan. App. 2013) (unpublished opinion) (citing *State v. Spencer*, 291 Kan. 796, 811, 248 P .3d 256 [2011]).

When, as here, a district court fails to articulate reasons why it imposed a departure sentence, the proper procedure is to vacate sentence and remand for resentencing. *State v. Peterson*, 22 Kan. App. 2d 572, 576, 920 P.2d 463 (1996). We do so here.

Sentence vacated and case remanded for resentencing.