NOT DESIGNATED FOR PUBLICATION

No. 119,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONALD GILKES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed November 15, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: A jury convicted Donald Gilkes of three counts of failure to register under the Kansas Offender Registration Act (KORA), K.S.A. 2018 Supp. 22-4901 et seq. On appeal, Gilkes claims the district court erred by denying his motion for a new trial, which alleged ineffective assistance of counsel. Finding no error, we affirm.

1

On September 10, 2004, Gilkes was convicted in Pettis County, Missouri, for committing the crime of sexual misconduct involving a child. Under the comprehensive national system for the registration of sexual offenders, Gilkes was required to register every three months for the rest of his life. The purpose of the national offender registration system is to monitor and track sex offenders following their release and provide information about convicted sex offenders to local and federal authorities and the public, such as an offender's name, current location, and past offenses. See 34 U.S.C. § 20901 et seq. (2012).

In 2015, Gilkes was convicted of trespassing on railroad property in Lyon County, Kansas, and was sentenced to jail as a result. On September 10, 2015, Gilkes completed the required offender registration with the Lyon County Sheriff's Office. At some point during his time in jail, Gilkes was granted permission to participate in a work-release program. On September 24, 2015, Gilkes left the jail for his job under the work-release program but never returned. Gilkes failed to register with the sheriff's office following his escape from custody or anytime thereafter.

The State charged Gilkes with three counts of aggravated failure to register for (1) failing to notify the sheriff's office of any change in address, (2) failing to notify the sheriff's office of any change in employment, and (3) failing to renew his Kansas identification card. Before trial, defense counsel moved for a continuance and requested a mental health evaluation. The district court denied both motions and scheduled a jury trial for the following week. Before the trial began, defense counsel moved to withdraw based on Gilkes' request for new counsel. After discussing the matter with Gilkes, the district court denied the request.

At trial, the State presented testimony from four witnesses. Although there is no dispute that Gilkes was living in Lyon County based on his commitment to the jail in that county, the witnesses did not disclose this fact in their testimony but instead generally referred to him as a resident of Lyon County.

Sheriff's Deputy James Baker testified that on September 25, 2015, he received information that Gilkes, who was living and working in Lyon County, had not returned to his residence or his job. Baker stated law enforcement was not able to locate Gilkes at the time.

Shannon Domingo, a program consultant and custodian of records at the Kansas Bureau of Investigation's Offender Registration Unit, testified that offenders who are subject to the registration requirements must register four times a year—their birth month and every three months thereafter. Domingo stated that offenders must register any change in their residence or place of employment within three days of the change. Domingo advised that Gilkes was required to register in Kansas and that on September 10, 2015, he lived and worked in Lyon County. Domingo testified that Gilkes had registered with the Lyon County Sheriff's Office on that date but did not update his registration anytime within the next 180 days.

Detective Sergeant Jacob Welsh of the Lyon County Sheriff's Office testified that he began investigating Gilkes' case in July 2016. During the investigation, Welsh confirmed that Gilkes had not returned to his residence or employment in Lyon County. Welsh further discovered that Gilkes had not updated his Kansas identification card, which had expired on September 4, 2015.

Brian Anstey, a detention administrator for the Lyon County Sheriff's Office, testified that Gilkes currently was in custody at the Lyon County Jail after his transfer from Portland, Oregon, in December 2016.

3

Throughout the State's case-in-chief, defense counsel did not cross-examine any of the State's witnesses. After the close of the State's case, defense counsel asked to proffer Gilkes' testimony to the court. The district court denied the request. Gilkes then indicated that he wanted to testify and engaged in a lengthy discussion with the district court about his right to testify and the possible implications of his testimony. At one point, the district court allowed a recess so that defense counsel could further discuss the issue with Gilkes. Following this conversation, Gilkes could not give the district court a conclusive answer regarding his desire to testify, so the court found that Gilkes had either refused or decided not to testify.

The jury found Gilkes guilty as charged. After the trial, the district court allowed defense counsel Nicholas Heiman to withdraw and appointed Stephen Atherton to represent Gilkes. Atherton filed several motions, including a motion for a new trial based on ineffective assistance of counsel. The motion alleged, in relevant part, that Heiman had been ineffective at trial in failing to cross-examine any of the State's witnesses and in putting forth a guilt-based defense during closing arguments.

The parties appeared before the district court for an evidentiary hearing on the motion. The court heard testimony from Heiman and Gilkes. Heiman testified that, before trial, he discussed with Gilkes the likelihood of success at trial given that the crime of failure to register is a strict liability crime. Specifically, Heiman told Gilkes there was no viable defense to the charged crimes because Gilkes' reasons for leaving Kansas were irrelevant in determining whether he had failed to register. Notwithstanding this legal advice, Gilkes declined a plea offer from the State. Based on several conversations with Gilkes, Heiman did not believe that Gilkes had any mental health issues and felt that Gilkes was competent throughout trial. Heiman did not recall whether he cross-examined any of the State's witnesses. Given the nature of the crimes at issue, Heiman said his defense strategy at trial was simply to require the State to prove its case. Heiman noted that the reason he stipulated to the fact that Gilkes had been convicted of a crime

4

requiring registration under the KORA was because he did not want the jury to know the sexual nature of the underlying conviction. And Heiman said the reason he conceded that Gilkes had not registered in Kansas within 180 days of his last registration was because the State clearly had proved this element and he wanted to maintain some credibility with the jury.

Gilkes testified next and began by explaining that on September 24, 2015, his girlfriend in Wichita told him that she had been raped. Gilkes stated that he "blacked out" and went to Wichita without remembering how he got there and that he and his girlfriend somehow ended up in Oregon. Gilkes said he frequently used drugs in Oregon and did not remember the year that he lived there. After learning that there was a warrant for his arrest in Kansas, Gilkes said he did not even remember being in Kansas.

Gilkes went on to testify that when he first met Heiman, he was taking medication that affected his ability to understand their discussions. Gilkes said that he was not taking this medication during the trial and that he currently was on a different medication that gave him more clarity and helped with anger issues. According to Gilkes, he asked Heiman to subpoena witnesses and mental health records to aid in his defense, but Heiman did not do so. Gilkes testified that he disagreed with how Heiman conducted the trial and that he did not understand Heiman's defense strategy or the meaning of strict liability.

After hearing testimony from the witnesses and argument from counsel, the district court issued a ruling from the bench denying Gilkes' motion for a new trial. Specifically, the court found that Heiman's representation was not deficient and that there was no reasonable probability of a different outcome. The district court later imposed a durational departure prison sentence of 61 months.

5

On appeal, Gilkes argues that the district court erred in denying his motion for a new trial based on ineffective assistance of counsel. In response, the State contends that counsel's performance resulted from sound trial strategy and therefore was not constitutionally deficient.

We note, as a preliminary matter, that Gilkes' motion for a new trial was untimely filed. Under K.S.A. 2018 Supp. 22-3501(1), a criminal defendant has 14 days after the verdict to file a motion for a new trial when that motion is not based on newly discovered evidence. A district court may extend the deadline within that 14-day period. Otherwise, the deadline is not discretionary. See *State v. Holt*, 298 Kan. 469, 479, 313 P.3d 826 (2013). Gilkes' motion for a new trial fell well outside the 14-day period, and there is no indication in the record that he timely requested an extension. In ruling on Gilkes' motion, the district court noted its untimeliness but still elected to consider it.

In *State v. Reed*, 302 Kan. 227, 233, 352 P.3d 530 (2015), our Supreme Court addressed appellate procedures for claims of ineffective assistance of counsel that are brought in untimely motions for a new trial. The court observed that appellate courts may decline to address the issue and either (1) leave the defendant to pursue relief through a timely K.S.A. 60-1507 motion or (2) remand to the district court for examination of the issue in further proceedings pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). But the court explained that the filing of ineffective assistance of counsel claims in an untimely motion for a new trial is a procedural flaw, not a jurisdictional bar. An ineffectiveness claim therefore can be resolved by an appellate court in some cases, such as when there is no need for an evidentiary record or when the merit or lack of merit of an ineffectiveness claim about trial counsel is obvious. *Reed*, 302 Kan. at 234. In that case, the Supreme Court addressed the merits of Reed's ineffective assistance of counsel

claims because it had the advantage of the full transcript of the evidentiary hearing in the record on appeal. 302 Kan. at 235-36.

This case involves a situation nearly identical to that in *Reed*. Thus, despite any procedural flaws, we may consider Gilkes' ineffective assistance of counsel claim because we have the benefit of a full evidentiary hearing in the record. And addressing Gilkes' claim now, rather than having him repeat his claim in a future K.S.A. 60-1507 motion, serves judicial economy.

Ordinarily, appellate courts review the district court's denial of a new trial motion for an abuse of discretion. But because we are reviewing Gilkes' claim for the reasons set forth in *Reed*, the standards for review relating to the denial of a new trial motion do not apply here. Instead, we will apply the standards for review of an ineffective assistance of counsel claim. Challenges involving claims of ineffective assistance of counsel present mixed questions of fact and law. When the district court holds a full evidentiary hearing—as the district court did in this case—appellate courts review the district court's factual findings to determine whether those findings are supported by substantial competent evidence. Appellate courts review de novo the district court's legal conclusion regarding whether counsel provided deficient performance. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent counsel's deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The

7

reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

In this case, Gilkes alleges that Heiman's conduct rose to the level of constitutional error under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), by (1) failing to cross-examine any of the State's witnesses and (2) arguing a guilt-based defense during closing argument.

*Failure to cross-examine witnesses*

Gilkes argues that by failing to cross-examine any of the State's witnesses, Heiman abandoned any effort to meaningfully challenge or present a defense to the State's claims. Specifically, Gilkes contends that Heiman could have used cross-examination as an opportunity to present evidence to explain to the jury Gilkes' mental health and substance abuse issues, as well as the circumstances surrounding his reasons for leaving Lyon County. Gilkes suggests that if the jury knew his reasons for failing to register, the jury might have looked more closely at the evidence and possibly discovered an error in the State's case.

At the hearing on Gilkes' motion for a new trial, Heiman testified that he did not cross-examine the State's witnesses because failing to register is a strict liability crime for which the State did not have to prove criminal intent. As a result, Heiman's defense at trial was simply to make the State prove its case. Later, Atherton conceded he was unaware of any credibility issues that would have been disclosed had Heiman cross-examined the State's witnesses. Atherton did suggest it might have been helpful for Heiman to establish through cross-examination that Gilkes was only required to register in Lyon County because he was in jail in Lyon County. But at the end of the day, Atherton ultimately agreed that Heiman had to make a strategic decision in weighing the

8

pros and cons of telling the jury that the reason Gilkes had to register in Lyon County was because he was in jail during the relevant time period.

In denying Gilkes' motion, the district court found that Heiman's failure to cross-examine the State's witnesses was not deficient:

> "[W]hile it is extremely rare that we would see that trial counsel would not cross-examine any witnesses, there are, in this instance, some reasons for not doing so. One of which we've just discussed and that is the fact that if there had been cross examination as to establishing something of a state of mind defense for Mr. Gilkes it very well could have raised the issue or, as counsel put it, opened the—allowed the genie out of the bottle as to why Mr. Gilkes was here in Lyon County. He was here in custody as the result of the commission of a crime. And counsel was making a diligent effort to avoid putting that information in front of the jury to avoid the risk that the jury would consider that to be propensity to commit the present crime for which he was standing trial.
>
> "I think I understand that under these circumstances. And while there may have been some other questions that could have been raised, when I analyze this issue I can find no evidence that would have been presented during cross examination that would have caused a different view. In other words, the bottom line here is, had he cross examined the witnesses what would he have gained from doing that that would have benefitted the defendant and I can find nothing. However, cross examination could well have led to simply allowing the witnesses to restate their prior testimony and given them the opportunity to buttress their direct examination."

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013). Due to the sexual nature of the underlying crime for which Gilkes was required to register, Heiman testified his defense strategy simply was to require the State to prove its case. And Atherton admitted that Heiman had to make a strategic decision in deciding whether to use cross-examination as a way to inform the jury that Gilkes was only

9

residing in Lyon County because he was in jail for committing yet another crime. Heiman's strategy was sound and therefore unchallengeable.

To the extent that Gilkes suggests evidence of his mental health should have been provided to the jury, it is unclear what evidence was available to Heiman. Before trial, the district court denied Heiman's request for a mental health evaluation. And Heiman testified that he had no concerns prior to or during trial about Gilkes' mental health. And Gilkes decided not to testify after lengthy discussion with the district court and Heiman, thereby eliminating the possibility of presenting this evidence himself.

But even if Heiman had been aware of Gilkes' alleged mental health issues, Gilkes fails to allege that cross-examining any of the four witnesses presented by the State at trial about those mental health issues would have been fruitful or relevant. There is nothing in the record to suggest that any of the State's witnesses could have testified about Gilkes' state of mind, his mental health issues, his drug use, the circumstances regarding his failure to register, or his time in Oregon. As detailed above, the State's witnesses testified generally about offender registration requirements, Gilkes' failure to register, and law enforcement's search for Gilkes. In any event, Gilkes' reasons for failing to register were irrelevant given the strict liability nature of the charges against Gilkes. See K.S.A. 2018 Supp. 21-5203(e) (violation of KORA is crime for which "[a] person may be guilty . . . without having a culpable mental state").

Heiman's strategic decision not to cross-examine witnesses did not constitute deficient performance. Substantial competent evidence supported the district court's finding that Heiman's failure to cross-examine the State's witnesses would not have benefitted Gilkes, which in turn supported the district court's legal conclusion that Heiman's performance was not constitutionally deficient.

10

*Guilt-based defense*

Gilkes contends Heiman was ineffective by asserting, without his consent, a guilt-based defense during closing argument. Gilkes claims Heiman's decision to wholly eliminate any shred of reasonable doubt regarding the State's allegations was akin to entering a plea of guilty.

To convict Gilkes of aggravated failure to register, the State was required to prove that (1) Gilkes had been convicted of an offense that would require registration under the KORA; (2) Gilkes failed to (a) register in person upon the termination of his employment status, (b) register in person upon the termination of his residence, and (c) renew his Kansas identification card; (3) Gilkes' failure began on September 24, 2015, and continued for more than 180 days; and (4) Gilkes was required to register as an offender in Lyon County, Kansas. See PIK Crim. 4th 63.150 (2014 Supp.). And the jury was instructed: "A person convicted of an offense that requires registration under the Kansas Offender Registration Act must register in any county in which the person resides, maintains employment, or attends school; or any county in which the person intends to reside, intends to maintain employment, or intends to attend school." See PIK Crim. 4th 63.150 (2014 Supp.).

During closing argument, Heiman reminded the jury that the State had the burden to prove beyond a reasonable doubt that Gilkes was guilty and that the jury must presume that Gilkes was not guilty unless it was convinced from the evidence that he was guilty. Heiman then reviewed the elements of the crime of aggravated failure to register and informed the jury that Gilkes had stipulated to the first element—that he had been convicted of a crime that would require registration in Kansas. Heiman then noted that Gilkes ultimately was located in Oregon and pointed out that the State did not provide any evidence to establish that Gilkes had failed to register in Oregon. Heiman agreed there was "no doubt" that Gilkes had not registered in Kansas for more than 180 days

11

after the last time that he had registered. But Heiman questioned whether the State provided the necessary evidence to show that Gilkes actually was required to register as an offender *in Kansas* during the time the State claimed he had failed to do so. Heiman argued that the State simply had not met its burden of proof and asked the jury to return a not guilty verdict on all three counts.

In rejecting Gilkes' guilt-based defense argument, the district court remarked that Heiman's concession to certain elements of aggravated failure to appear was consistent with a defense he raised during closing argument—that Gilkes had not registered in Kansas because he may have registered in Oregon.

Substantial competent evidence supported the district court's finding that Heiman did not assert a guilt-based defense. Indeed, the record reflects that Heiman's defense strategy was not guilt-based or inconsistent with Gilkes' own statements to the court at trial and at the hearing on his motion for a new trial. Heiman agreed that Gilkes had been convicted of a crime that would require registration in Kansas and that Gilkes had not registered in Kansas for at least 180 days. Heiman's stated defense strategy was to focus on the State's failure to prove a different element of the crimes: that Gilkes actually was required to register in Kansas as an offender during the relevant period. And throughout closing argument, Heiman reminded the jury of Gilkes' presumption of innocence and argued that the State had failed to meet its burden of proof. The district court properly concluded that Heiman's comments during closing argument were not deficient.

Because the district court properly concluded that Heiman's performance was not deficient, we need not evaluate whether Gilkes suffered any prejudice.

Affirmed.