NOT DESIGNATED FOR PUBLICATION

Nos. 123,055
123,372

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEROME E. GRIFFIN SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed September 10, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and CLINE, JJ.

PER CURIAM: In this consolidated appeal, Jerome E. Griffin Sr. asks this court to set aside his convictions in two cases. A jury convicted him of one count of misdemeanor theft in Wyandotte County Case No. 18 CR 426. The jury also convicted Griffin of one count of burglary of a dwelling, two counts of misdemeanor theft, and one count of criminal damage to property in Wyandotte County Case No. 18 CR 620. Because Griffin has served his sentence, we find that his contention that the district court erred by classifying a prior burglary conviction as a person felony in calculating his criminal

1

history score is moot. Furthermore, we find that the district court did not err in denying Griffin's motion for a new trial. Thus, we affirm Griffin's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2018, the State charged Griffin with burglary of a dwelling and misdemeanor theft in Wyandotte County Case No. 18 CR 426. Subsequently, on June 14, 2018, the State charged Griffin with one count of burglary, two counts of misdemeanor theft, and one count of criminal damage to property in Wyandotte County Case No. 18 CR 620. The district court consolidated the two cases for trial.

During the two-day jury trial, which commenced on January 28, 2019, the State presented the testimony of 11 witnesses and introduced 47 exhibits into evidence. In his defense, Griffin presented the testimony of one witness and introduced five exhibits into evidence. Ultimately, the jury convicted Griffin of misdemeanor theft in case No. 18 CR 426 and convicted him of all the charges in case No. 18 CR 620.

We will briefly summarize the testimony and evidence presented to the jury.

*Case No. 18 CR 426*

On the morning of April 18, 2018, Guadalupe Rios observed a truck in front of a neighbor's house in Kansas City. The house—which was not occupied at the time—was owned by Connie Davis. She became the owner of the house after the death of her mother. After her mother died, Davis stored personal property—such as kitchen items, furniture, and other items—in the house. At the time of the incident, the house had not been lived in for about five years.

Guadalupe observed two men get out of the truck and head towards Davis' house. When she greeted the men, one of them responded. She initially thought that the men might be there to fix a window that had been broken by some children the previous day. However, she began to feel that something was "not right" and went back to get her son, Fernando, to see if he recognized the men.

When Guadalupe returned to her porch, she saw one of the men headed back to the truck carrying a box of pots and pans, which he placed in the bed of the truck. Guadalupe did not see the men go in or come out of the house. When Fernando walked onto the porch, he saw both of the men at the back of the truck. One of them—who was later identified to be Griffin—kept looking at Fernando before leaving the bed of the truck and getting into the driver's seat.

Fernando saw the other man begin walking toward the house. The man in the driver's seat rolled down the window and said something to the other man. After looking in Fernando's direction, the man got into the passenger's seat and the truck drove away. While the men were driving away, Fernando took a photograph of the truck and went to check on Davis' house.

As he approached the house, Fernando saw that the front storm door was open, and he was able to see that the front interior door was also open. Fernando then went to the back of the house and saw that the large piece of plywood covering an opening in the exterior wall had been forced open. According to Davis' uncle, Thurman Sauls, he had checked the house the night before and the front door was locked and the plywood was in place.

Fernando contacted Davis to let her know what was going on. He also showed her the photograph he had taken of the truck. We pause to note that the photograph was admitted into evidence at trial. Upon arriving at the house, Davis found that it had been

3

broken into and that numerous items of personal property were missing. Davis stayed at the house while her husband went to obtain materials to repair the damage that had been done at the house.

While she was waiting in her car, Davis saw a man walking down the street and approaching her house. After looking toward the house, the man went back in the direction from which he had come and got into the passenger side of a truck. According to Davis, she thought the truck resembled the one in Fernando's photograph. So, she started her car and began following the truck. As she drove, Davis called 911 on her cell phone.

About four blocks away from Davis' house, the truck stopped. Davis saw a man get out of the passenger door and take something out of the bed of the truck. Davis was able to see the truck's license plate number and reported it to the 911 dispatcher. Davis pulled up next to the truck and it started moving with the passenger still at the bed of the truck. Although Davis did not get a good look at the driver, she continued to follow the truck.

Officer Mark Palmerin was dispatched to respond to Davis' call. According to Officer Palmerin, he saw a truck matching the description given by Davis as he headed north on 18th Street. At that point, the officer stopped the truck and made contact with the driver—who he identified as Griffin. With Griffin's consent, the officers searched the car and found numerous items of personal property from Davis' house in the truck—including bowls, pots, and pans. At trial, Davis identified these items as property taken from the house without permission.

After Griffin's arrest, the police showed photo lineups to both Guadalupe and Fernando. After looking at the photographs, Fernando was not able to make an identification of the men he saw on the morning of April 18, 2018. In addition,

4

Guadalupe identified another man—rather than Griffin—as the person she saw at Davis' house. Nevertheless, Guadalupe was able to identify Griffin at trial as the driver of the truck. Defense counsel used Guadalupe's statement and her incorrect identification during the photo lineup in an attempt to impeach her testimony.

*Case No. 18 CR 620*

On June 12, 2018, Derrick Lasley's house in Kansas City was being remodeled by Matt Watson. Specifically, Watson was installing insulation and drywall for an addition to the house. After completing work that evening, Watson and his coworker, T.J. Martin, left some of their equipment—including ladders, extension cords, and staple guns—at the house because they planned on returning the following day to continue the project.

The following morning, Carl McKinney drove past Lasley's house and became suspicious when he noticed that a window had been broken. McKinney also noticed a blue Ford Ranger pickup truck was backed up in the driveway and parked very close to the house. In addition, he saw two men next to the truck. Although McKinney did not see anything in the bed of the truck, he felt that something was not right and contacted the police. At trial, McKinney was able to identify Griffin as one of the men he had seen that morning at the bed of the truck.

Officer Leo McIntosh was dispatched to respond to the 911 call. As he was heading towards Lasley's residence, Officer McIntosh saw a blue Ford Ranger truck that matched the description provided by McKinney. The officer stopped the truck and identified Griffin as the driver. Another man—identified as Linuell Wright—was in the passenger seat. In speaking to Griffin, Officer McIntosh noticed a cut on his arm that was bleeding. In the bed of the truck, the officer found several tools and several ladders.

At trial, Watson identified the tools and ladders found in the bed of the truck as those that he had left inside Lasley's residence the night before. Also, Watson testified that the items of personal property had been taken without his permission. In addition, Lasley identified a utility cable found in the truck as his property that had been in the house. He also testified that he had not given anyone permission to enter the house or take the cable.

Officer Audra Moore testified at trial that she went to Lasley's house on the morning of the incident. In doing so, she found that windows on both the front and back of the house had been broken. She also observed that the broken glass was located on the inside and outside of the window. At the back of the house, Moore saw footprints and found that the back door was ajar. After speaking with Officer McIntosh and finding out that Griffin had a cut on his arm, Moore found a substance that appeared to be fresh blood smeared on the frame of the back door.

Detective Jeremy Shepard also responded to Lasley's house to investigate the reported burglary. The detective testified that he noticed that the pattern on the bottom of Griffin's shoes appeared to match photographs of footprints found at the crime scene. Additionally, Detective Shepard testified that he noticed broken glass on the rear bumper of Griffin's truck that appeared to be from a window.

*The Verdict and Sentence*

After deliberation, the jury acquitted Griffin of burglary in case No. 18 CR 426. However, the jury convicted him of the theft charge in that case. Moreover, in case No. 18 CR 620, the jury convicted Griffin on all of the charges. After the jury rendered its verdict, a postsentence investigation (PSI) report showed that Griffin's criminal history score was B based in part on a prior burglary conviction in 1993 that was scored as a person felony.

6

At the sentencing hearing held on October 30, 2019, Griffin objected to his criminal history score. He argued that his 1993 burglary conviction should not be scored as a person felony. In response, the State produced the charging document and the journal entry of conviction from the 1993 case. Because these documents indicated that Griffin's prior conviction involved a residential burglary, the district court denied Griffin's challenge to his criminal history score and found his criminal history score was B.

The district court denied Griffin's request for probation. Instead, the district court sentenced Griffin to six months in the county jail for his conviction in case No. 18 CR 426 and to a controlling term of 29 months in prison for the convictions in case No. 18 CR 620. The district court ordered the sentences in each case to be served consecutive to each other. The district court also ordered 12 months of postrelease supervision.

On February 25, 2019, Griffin filed a pro se motion for new trial. However, Griffin sent a letter to the district court a few months later in which he asked to withdraw his motion for new trial. Then, on September 4, 2019, Griffin filed a second pro se motion for new trial in which he alleged that trial counsel was ineffective. After the district court appointed counsel to represent Griffin on his motion, his new attorney filed another motion for new trial on his client's behalf. In that motion, counsel reasserted that trial counsel had been ineffective and also alleged that two of the jurors may have fallen asleep during trial.

On October 30, 2019, the district court held a hearing on Griffin's motion for new trial. Griffin did not ask to present any evidence in support of the motion nor did he request that the hearing be continued to allow him to do so. Rather, the district court heard the arguments presented by counsel and issued its ruling. In denying Griffin's motion, the district court first noted that trial counsel had been able "to convince the jury that the defendant was not guilty . . . on one felony charge." Ultimately, the district court concluded that Griffin's trial counsel was not ineffective.

ANALYSIS

*Criminal History Score*

On appeal, Griffin first contends that the district court erred in determining that his 1993 burglary conviction should be classified as a person felony for the purpose of his criminal history score. The State contends that this issue is moot because Griffin has served the prison portion of his sentence. In compliance with Supreme Court Rule 2.042 (2021 Kan. S. Ct. R. 18), the State filed a notice of change in custodial status in which it asserted that Griffin had been released from custody. In support of this assertion, the State attached a letter from Michelle Sullivan, the Manager of the Kansas Department of Corrections' (KDOC) Sentence Computation Unit, confirming that Griffin had served the prison portion of his sentence.

After reviewing the notice of change in custodial status and the supporting document filed by the State, we ordered the parties to show cause as to why the issue regarding his criminal history score should not be dismissed as moot. In response, Griffin did not dispute that he has served his prison sentence. Instead, Griffin challenges whether the letter from the KDOC is sufficient to constitute a prima facie showing that he was released from prison. In addition, Griffin suggested the issue was not moot because he would have the burden in any future case to show that his criminal history score—as established in this case—was inaccurate.

As a general rule, Kansas courts do not consider moot questions or render advisory opinions. See *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020); *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009) (the court's role is to determine real controversies involving legal rights actually involved in a particular case brought before it). Thus, an issue on appeal may be dismissed as moot if it is clearly and convincingly shown that the

8

actual controversy has ended and the only judgment that could be entered would be ineffectual. See *State v. Montgomery*, 295 Kan 837, 840, 286 P.3d 866 (2012).

As the party asserting that the criminal history issue is moot, the State has the burden of making a prima facie showing that the actual controversy in the case has ended. *Roat*, 311 Kan. 581, Syl. ¶ 6. Here, the State provided a letter signed by the Manager of the KDOC Sentence Computation Unit and printed on KDOC's letterhead as an attachment to the notice of change in custodial status. Although this letter may not be as reliable as the certification provided in *State v. Castle*, 59 Kan. App. 2d 39, 477 P.3d 266 (2020), it is still "reliable enough to meet the State's prima facie case and to shift to the defendant the burden to show that despite the letter he has not fully completed the terms of his sentence, that his substantial interest would be impaired by dismissal, or that an exception to the mootness doctrine applies." *State v. Harmon*, No. 122,153, 2021 WL 936070, at *3 (Kan. App. 2021) (unpublished opinion).

Accordingly, we conclude that the letter from the KDOC provided by the State in this case is sufficiently reliable to meet the State's prima facie case and to shift the burden to Griffin. Of course, simply because a defendant has been released from prison does not automatically mean that one's case is moot. See *State v. Mayes*, 311 Kan. 615, 617, 465 P.3d 1141 (2020). As indicated above, Griffin argues that the issue relating to his criminal history score is not moot because it would likely place the burden on him— under K.S.A. 2020 Supp. 21-6814(c)—in the unfortunate event that he commits additional crimes in the future.

In *State v. Tracy*, 311 Kan. 605, 608-09, 466 P.3d 434 (2020), the Kansas Supreme Court rejected the argument that an appeal was not moot because a future court might consider the classification of a prior crime binding on the defendant. In addition, our Supreme Court held that a defendant continues to have the right to object to their criminal history score in any future proceedings. In other words, under K.S.A. 2020

Supp. 21-6814(c), a defendant has the right to object to his or her criminal history and—by doing so—can shift the burden of proof to the State. 311 Kan. at 608. Consequently, we conclude that the criminal history issue presented in this case is moot.

*Motion for New Trial*

The second issue presented is whether Griffin's motion for new trial—which includes an allegation of ineffective assistance of counsel—should be remanded to the district court. At the outset, we note that Griffin's motion for a new trial was untimely filed. Nevertheless, we find that a determination of this issue on the merits is appropriate under the premise that the motion for new trial could be considered to be a K.S.A. 60-1507 motion. See *State v. Holt*, 298 Kan. 469, Syl. ¶ 7, 313 P.3d 826 (2013); *State v. Reed*, 302 Kan. 227, Syl. ¶ 1, 352 P.3d 530, *cert. denied* 136 S. Ct. 344 (2015) (district courts have jurisdiction over untimely motions alleging ineffective assistance of counsel). As such, for the purposes of this appeal, we will consider this issue under the standards applicable to K.S.A. 60-1507 motions.

A district court has three options when handling a K.S.A. 60-1507 motion:

"'"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing."' [Citations omitted.]" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

In this case, the district court held a hearing in which it heard arguments from counsel, but the court did not consider any evidence beyond the evidence in the record. Although it is unclear whether this was intended to be an evidentiary hearing, we will

consider it to be a preliminary hearing for the purposes of this opinion. When the district court denies a K.S.A. 60-1507 motion based only on the motions, files, and records after a preliminary hearing, the appellate court is in just as good a position as the district court to consider the merits. Therefore, our standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

To prove that trial counsel's performance was ineffective, Griffin must establish: (1) that trial counsel's performance was deficient under the totality of the circumstances; and (2) that trial counsel's deficient performance resulted in prejudice. In addition, to establish prejudice, Griffin must show that there is a reasonable probability the jury would have reached a different result absent the deficient performance. See *Khalil-Alsalaami v. State*, 313 Kan. 472, Syl. ¶ 3, 486 P.3d 1216 (2021). A reasonable probability means a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Griffin asks us to remand his motion to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). However, Griffin is required to make more than conclusory contentions. Instead, to satisfy his burden that an evidentiary hearing is warranted, Griffin must either set forth an evidentiary basis for his contentions or the evidentiary basis for such contentions must be evident in the record. See *Sola-Morales*, 300 Kan. at 881. Based on our review of Griffin's motion, we find that he failed to satisfy this burden. Likewise, he makes no effort to satisfy this burden on appeal.

In his brief, Griffin merely lists five issues that he suggests should be remanded for an evidentiary hearing. The issues are as follows:

"(1) whether trial defense counsel was pursuing a strategy to seek a verdict in which [Griffin] would be found guilty of only one felony offense; (2) what was trial defense

11

counsel's thinking regarding the possible testimony of the co-defendant, Wright, at [Griffin's] trial; (3) did trial counsel attempt to contact and speak with Wright to determine if Wright would be willing to testify at [Griffin's] trial and what he would say; (4) whether trial defense counsel adequately allowed [Griffin] to participate and assist in his defense; and (5) what were the facts related to the apparent defense decision that [Griffin] would not testify at his trial."

Although Griffin asserts that his trial counsel told the jury that he was guilty on some counts in its opening statement, the district court found this to be unsupported by the record. Our review of the transcript of trial counsel's opening statement confirms that defense counsel made no claim or assertion that Griffin was guilty of some of the counts. Rather, the transcript shows that trial counsel specifically referred to "holes" in the State's case and asks the jury to find Griffin not guilty. Similarly, in closing argument, defense counsel again argued that Griffin should be found not guilty on all of the charges. Moreover, Griffin points to nothing in the record to support his claim that his trial counsel conceded to one or more of the charges.

Next, Griffin alleges that an evidentiary hearing is required to determine if trial strategy was the reason that defense counsel failed to call Griffin's codefendant to testify as a witness at trial. The district court found that the decision not to call the codefendant as a witness was a matter of trial strategy. Although Griffin argues that trial strategy cannot be relied on as a basis to deny his motion without first hearing counsel's testimony, he fails to make any argument as to how trial counsel's performance was deficient under the totality of the circumstances or how counsel's performance resulted in prejudice.

"'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" See *Kahlil-Alsalaami v. State*, 313 Kan. at 493 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Here, a review of the record reveals that trial counsel intentionally avoided

12

calling Wright to testify. In particular, we note that Detective Shepard testified that the codefendant had pled guilty to the charges filed against him. Further, in a conference held outside the presence of the jury, the State indicated a desire to ask the detective about statements the codefendant allegedly made to him that implicated Griffin. Trial counsel objected to this line of question on the basis of hearsay, and the district court sustained the objection because the codefendant was not being called as a witness. At the very least, this exchange provides insight that trial counsel made a strategic decision not to call the codefendant to testify at trial because he had previously made statements that might harm Griffin's defense. In addition, Griffin makes no argument as to how the codefendant's testimony would have helped his defense—if at all—nor does he argue that he was prejudiced by trial counsel's decision not to call the codefendant as a witness.

Griffin also raises a question regarding whether his trial counsel made any effort to contact the codefendant to determine if he would be willing to testify and what he would say. Again, the transcript of the conference outside the presence of the jury discussing the statements allegedly made by the codefendant to the detective implicating Griffin points to the strategic reason why trial counsel did not choose to call this witness. In addition, it is Griffin's burden to establish what the codefendant's trial testimony would have been if he had been called as a witness and to show how failing to call him was prejudicial to his defense. Thus, we find that Griffin's arguments regarding trial counsel's failure to call the codefendant as a witness are based on speculation and are not based on facts in the record on appeal.

Griffin also suggests that trial counsel did not allow him to adequately participate in his defense or in the decision not to call him as a witness. We note that these issues were not raised before the district court. Generally, issues not raised before the district court cannot be raised on appeal. See *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Also, Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35) requires an

13

appellant to explain why an issue that was not raised below should be considered for the first time on appeal. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), and *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), our Supreme Court issued a warning to litigants that Supreme Court Rule 6.02(a)(5) would be strictly enforced by the appellate courts. As such, litigants who failed to comply with this rule risk a ruling that the issue will be deemed waived or abandoned and is not properly before the court on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Consistent with these cases, we find that Griffin has not preserved these issues for consideration on appeal.

Finally, we note that Griffin makes no argument as to how trial counsel's performance prejudiced his defense. Likewise, Griffin makes no reference in his brief to several of the issues that he raised in his motion for new trial. Again, issues not adequately briefed are deemed waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). As a result, we also find that these issues have been waived or abandoned on appeal.

To be entitled to an evidentiary hearing on a K.S.A. 60-1507 motion, a movant "must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record. [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Here, we find that Griffin's claims are conclusory and not supported by the record on appeal. We have also reviewed the evidence presented at the trial of this case and find it unlikely that the jury would have reached a different result even if trial counsel was found to be ineffective. See *Khalil-Alsalaami*, 313 Kan. 472, Syl. ¶ 3.

In conclusion, after examining the motion, files, and records in these cases, we find that they conclusively show Griffin is not entitled to relief. Likewise, based on our review of the motion, files, transcripts, and records, we find that there is no substantial issue presented. Rather, we find that Griffin has failed to adequately support any of his contentions with argument, caselaw, or citations to the record in order to establish that an evidentiary hearing is warranted. Furthermore, Griffin fails to assert that the alleged deficiencies of his trial counsel prejudiced his defense in any way. Thus, we find no error in the district court's decision to deny Griffin's motion for new trial and we affirm Griffin's convictions.

Affirmed.